RENDERED:  SEPTEMBER 18, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-000118-ME

THE SULLIVAN UNIVERSITY SYSTEMS, INC.                   APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.             HONORABLE OLU A. STEVENS, JUDGE
ACTION NO. 10-CI-001130


MARY E. MCCANN, INDIVIDUALLY AND ON
BEHALF OF OTHERS SIMILARLY SITUATED                   APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

GOODWINE, JUDGE:  Mary E. McCann ("McCann") was formerly employed as

an admissions officer by The Sullivan University Systems, Inc. ("Sullivan").

McCann filed an action against Sullivan alleging that she and members of a

putative class of admissions officers were entitled to recover unpaid overtime

wages under the Kentucky Wage and Hour Act ("KWHA") codified in KRS[1] Chapter 337. The Jefferson Circuit Court granted McCann's motion for class certification. Sullivan appealed. After careful review of the record, finding no error, we affirm.

## BACKGROUND

On February 18, 2010, McCann filed her class action complaint and jury demand, alleging Sullivan failed to pay overtime compensation in violation of KRS 337.285, KRS 337.050, and the Fair Labor Standards Act ("FLSA"). The class definition included:

> All natural persons, at any time during the five year period preceding the filing of the Complaint through the filing of a motion for class certification, who have been or are currently employed as Admissions Officers for the Defendant and any of its Assumed Name Corporations including, but not limited to, Sullivan University College of Pharmacy, Sullivan College of Technology and Design, Sullivan University Global E-Learning, Dale Carnegie Kentuckiana, International Center for Dispute Resolution Leadership, Sullivan University (Louisville Campus, Lexington Campus, and Ft. Knox Campus), Louisville Technical Institute (Maine Campus and Marine Campus), The National Center for Hospitality Studies, Institute for Paralegal Studies, Spencerian College (Louisville Campus and Lexington Campus), and Interior Design Institute.

---

[1] Kentucky Revised Statutes.

Record ("R.") at 370. McCann requested, for herself and all class members, compensatory damages, attorneys' fees and costs, and injunctive relief to prevent Sullivan from underpaying admissions officers in the future.

In March 2010, Sullivan removed the case to federal court. The United States Department of Labor ("USDOL") investigated McCann's federal claims and filed a complaint based on the USDOL's findings in federal court seeking backpay and injunctive relief from Sullivan. McCann voluntarily dismissed her own federal claims later that year to avoid conflicting outcomes with the USDOL's case.

The federal court remanded McCann's state claims back to the Jefferson Circuit Court in October 2011. Because the USDOL case was ongoing, McCann waited to take any further action in the Jefferson Circuit Court until the USDOL case was resolved to avoid conflicting outcomes or waste resources with duplicative efforts. On February 18, 2012, Sullivan settled the USDOL federal claims, agreeing to classify admissions officers as "non-exempt" and to provide backpay during the period from August 7, 2009 to November 13, 2011.

After the USDOL settlement, McCann pursued the class's state claim in the Jefferson Circuit Court to secure remedies covered by her earlier-filed suit and its shorter statute of limitations reaching back to February 18, 2005. McCann's original counsel withdrew after the settlement, and McCann retained her

current counsel in August 2013. McCann then filed her motion to certify class for her state claims in October 2013. The circuit court initially denied the motion because the court was under the impression that KRS 337.285 did "not permit certification of class actions." R. at 201. The Supreme Court of Kentucky disagreed, reversing the order and remanding the case to the circuit court.

On remand, Sullivan again moved to certify the class or, alternatively, compel discovery in January 2018. The circuit court followed our Supreme Court's direction and applied the facts of this case to CR[2] 23 and certified the class in July 2018. Sullivan appealed, arguing the circuit court abused its discretion in certifying the class because its order did not contain sufficient findings under CR 23.01 and 23.02. This Court held the circuit court did not include enough analysis to determine whether the circuit court abused its discretion. As such, this Court vacated the circuit court's order and remanded for detailed factual findings and legal conclusions under CR 23.01 and CR 23.02.

On remand for the second time, McCann renewed her motion to certify the class and tendered a proposed order. Sullivan again opposed McCann's motion, arguing the proposed class did not meet the requirements under CR 23.01 and CR 23.02, and language in the proposed order made findings on the merits in

---

[2] Kentucky Rules of Civil Procedure.

-4-

favor of McCann. The circuit court entered McCann's proposed order certifying the class action on January 6, 2020. Sullivan appealed.

## STANDARD OF REVIEW

We review a trial court's decision to certify a class for abuse of discretion. *Nebraska All. Realty Company v. Brewer*, 529 S.W.3d 307, 311 (Ky. App. 2017) (citing *Sowders v. Atkins*, 646 S.W.2d 344, 346 (Ky. 1983)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). "Under this standard, we review the record and the ruling while giving deference to the trial court's factual findings and rulings because the trial court is in the best position to evaluate the evidence before it." *Brewer*, 529 S.W.3d at 311 (citing *Miller v. Eldridge*, 146 S.W.3d 909, 917 (Ky. 2004)).

Furthermore, our analysis may only address certification of the class, and we cannot make a conclusive determination on the merits.

> Because of the strict parameters of interlocutory appeals, the only question this Court may address today is whether the trial court properly certified the class to proceed as a class action lawsuit. We must focus our analysis on this limited issue and in so doing scrupulously respect the limitations of the crossover between (1) reviewing issues implicating the merits of the case that happen to affect the class-certification analysis and (2) limiting our review to the class-certification issue itself. Most importantly, "As the

-5-

certification of class actions. . . . is procedural, *such process cannot abridge, enlarge, or modify any substantive right of the parties*." "The right of a litigant to employ the class-action mechanism . . . is a *procedural right only*, ancillary to the litigation of substantive claims."

*Hensley v. Haynes Trucking, LLC*, 549 S.W.3d 430, 436-37 (Ky. 2018) (footnote omitted).

## ANALYSIS

Although not raised by Sullivan, we must address the threshold matter of whether the class definition is proper. A class definition is an improper fail-safe definition when it "predicates inclusion of class members on the ultimate finding of liability that the court must make." *Id.* at 449. An example of a fail-safe definition is "[a]ll truck drivers who are entitled to the prevailing wage." *Id.* Here, the class definition is not fail-safe because it includes all supervisors who worked for Sullivan as admissions officers during the relevant time period and is not dependent on ultimate liability. As such, the class definition was proper and does not warrant decertification.

On appeal, Sullivan argues the circuit court abused its discretion in certifying the class for the following reasons: (1) the circuit court improperly found for McCann on the merits; (2) the proposed class does not meet the requirements under CR 23.01 and 23.02; and (3) the class definition is overly broad.

First, Sullivan argues the circuit court improperly found for McCann on the merits. As discussed in the standard of review, our review is limited to "whether the trial court properly certified the class to proceed as a class action lawsuit." *Hensley*, 549 S.W.3d at 436. At this stage, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be *considered* to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 437 (footnotes omitted) (quoting *Amgen v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 465-66, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013)). "Stated differently, Rule 23 'requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.'" *Id.* (quoting *Amgen*, 568 U.S. at 459).

Sullivan takes issue with specific language in the circuit court's order. First, the order states that admissions officers had "very little discretion" in performing their jobs. R. at 369. Sullivan argues this was a merits determination because it amounts to a finding that admissions officers were not properly classified as exempt under the administrative exception to the overtime pay requirement of the KWHA. Second, the order states that admissions officers were "required to work a minimum of 40 hours a week" and "regularly work[ed] well

over the minimum of 40 hours a week." R. at 369. Sullivan argues this language constitutes a finding that all admissions officers were entitled to overtime pay. Third, the circuit court's order states that Sullivan "did not keep track of work hours properly." R. at 369. Sullivan argues the circuit court ignored the sign-in and sign-out sheets on which local admissions officers recorded their time.

Despite Sullivan's arguments to the contrary, the circuit court did not rely on these statements in its legal analysis under CR 23.01 and CR 23.02. Although we might have phrased these factual findings differently, we are satisfied that the circuit court properly considered the facts at hand only to the extent relevant in determining whether the Rule 23 prerequisites for certifying a class action were satisfied. This conclusion is supported by our review of the two-step analysis under CR 23.01 and 23.02, which follows.

Second, Sullivan argues the circuit court abused its discretion in certifying the class because the proposed class does not meet the requirements of CR 23.01 and CR 23.02. Class certification requires a two-step analysis. *Manning v. Liberty Tire Services of Ohio, LLC*, 577 S.W.3d 102, 111 (Ky. App. 2019). First, CR 23.01 requires:

> (a) the class is so numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the class, (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (d) the representative parties

will fairly and adequately protect the interests of the class.

"The four requirements in CR 23.01 to maintaining a class action can be summed up as *numerosity*, *commonality*, *typicality*, and *adequacy of representation* requirements." *Hensley*, 549 S.W.3d at 442-43 (citing *Brewer*, 529 S.W.3d at 311).

If all CR 23.01 requirements are met, then the circuit court must also find the circumstances satisfy at least one of the following conditions under CR 23.02:

> (a) The prosecution of separate actions by or against individual members of the class would create a risk of
>
> (i) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or,
>
> (ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (b) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (c) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (iv) the difficulties likely to be encountered in the management of a class action.

The circuit court found the proposed class satisfied all four requirements under CR 23.01(a). First, the circuit court found the proposed class met the numerosity requirement because it contained hundreds of members and joinder was impracticable. In *Hensley*, our Supreme Court opined that "the *numerosity* question does not involve attempting to find that magic number where a court can proclaim numerosity to be satisfied; rather, the *numerosity* analysis must focus on the *impracticability of joinder.*" *Hensley*, 549 S.W.3d at 446. The circuit court found joinder to be impracticable as there were hundreds of members. As such, we are satisfied that the numerosity requirement was met.

Second, the circuit court found the proposed class met the commonality requirement as the overarching question was whether Sullivan was required to pay the proposed class members backpay for overtime hours worked during the relevant period. The court found all proposed class members suffered at least three common injuries from Sullivan's conduct:

-10-

> (1) Sullivan misclassified Admissions Officers as exempt
> employees not entitled to overtime pay under any
> provision of KRS § 337.010 or KRS § 337.285; (2)
> Sullivan's policies resulted in Admissions Officers being
> required to work more than 40 hours per week without
> receiving overtime compensation in violation of KRS §
> 337.285(1); and (3) Sullivan violated the record keeping
> requirements with respect to hours worked in violation of
> KRS § 337.320.

R. at 375. Additionally, the circuit court found all class members sought "the same category of remedies: backpay from February 2005 to August 2009[3] in compensatory and liquidated damages, trial by jury, injunctive relief, and all other relief the court deems appropriate." R. at 375.

The crux of the commonality analysis is "[w]hether the class plaintiffs' claims 'depend upon a common contention . . . that is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Hensley*, 549 S.W.3d at 447 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S.Ct. 2541, 2545, 180 L.Ed.2d 374 (2011)).

Sullivan argues the proposed class did not satisfy the commonality requirement because determining whether each member of the class is entitled to damages will require individual inquiries into whether they qualify for the

---

[3] The video record indicates the appropriate time period, as agreed to by the parties, was actually February 18, 2005 to August 6, 2007.

-11-

administrative exemption or the outside sales exemption.  Sullivan's argument focuses on differences among class members, which may preclude some class members from receiving damages.  However, the focus of our analysis "is whether *the defendant's conduct was common* as to all of the class members." *Brewer*, 529 S.W.3d at 312 (emphasis added) (internal quotation marks and citation omitted). As in *Hensley*, "we cannot find a factual difference between the purported class members and their claims that would destroy satisfaction of the *commonality* requirement." *Hensley*, 549 S.W.3d at 447.  All class members were subjected to the same policies, and answering common questions as described by the circuit court will resolve all of their claims.

Third, the circuit court found the typicality requirement was satisfied. "The claims and defenses are considered typical if they arise from the same event, practice, or course of conduct that gives rise to the claims of other class members and if the claims of the representative are based on the same legal theory." *Id.* at 443 (citation omitted).  The circuit court found the claims were typical because they arise from Sullivan's pay policy, which applied to all class members.

Sullivan argues the class members' claims are not typical as class members had different work schedules, work locations, supervisors, and performance goals.  These are merits issues, not certification issues.  The circuit court clearly articulated that the class members' claims arise under Sullivan's pay

policy, and their claims are based on the same legal theory under the KWHA. Thus, the typicality requirement was satisfied.

Fourth, the circuit court found the adequacy of representation requirement was satisfied.

> Regarding the *adequacy of representation* requirement, "[a] court will normally look at two criteria: (1) the representative must have common interest with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." "[T]he representative must not have any significant interests antagonistic to or conflicting with those of the unnamed members of the class."

*Id.* (citations omitted). The court determined McCann and the unnamed class members have a common interest in recovering unpaid overtime wages, and McCann will engage in vigorous prosecution through qualified counsel. The circuit court noted the "only lapses in time were due to waiting on the USDOL case to conclude and McCann hiring new counsel to more vigorously pursue justice for the Admissions Officers." R. at 377. The court further found McCann's counsel have significant experience in practicing employment law, including many claims under KRS Chapter 337, and have experience in prosecuting class actions.

Sullivan argues McCann failed to vigorously prosecute her claims because she filed her complaint in February 2010 and failed to take any action for nearly four years. Sullivan argues the only action McCann took during that period

-13-

was to voluntarily dismiss her federal claims. Sullivan does not take issue with the qualifications of McCann's current counsel. Despite Sullivan's argument, we agree with McCann and the circuit court that the delay in prosecution of the action was due to waiting for resolution of the USDOL case and hiring new counsel. Since that time, McCann has vigorously pursued her claims as evidenced by her continuous pursuit of certification of the class over nearly seven years. As such, the circuit court did not abuse its discretion in finding the proposed class met all requirements under CR 23.01.

Turning to the second step of our analysis, the circuit court also found the proposed class satisfied one of the conditions under CR 23.02. The court found that under CR 23.02(c), common questions of law predominate and a class action is superior. The court found that "Sullivan's policy of improperly labeling Admissions officers as 'exempt' predominates the case and impacts every single class member." R. at 378. The court noted the need for individual damages calculations is not a barrier to a finding of predominance.

Sullivan argues the predominance element is lacking because it will ultimately not be liable for damages to all class members. We disagree.

> CR 23.02(c) "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Hensley*, 549 S.W.3d at 437 (citations and internal quotation marks omitted). . . . "This, in turn, entails identifying the substantive issues that will control the outcome,

> assessing which issues will predominate, and then determining whether the issues are common to the class[.]" *Bell Atl. Corp. v. AT & T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) (quotation marks and citation omitted).

*Manning*, 577 S.W.3d at 116. The issue at hand is whether Sullivan's pay policy, which applies to all class members, violates the KWHA. Sullivan failed to assert any individual issues, aside from ultimate liability to each class member, that would predominate over the questions common to the class. "[A] need for individual damages determinations is not necessarily fatal to class certification." *Id.* at 117 (citations omitted). As such, the circuit court did not abuse its discretion in finding that common issues predominate over any individual issues.

The circuit court also found class action is superior to other potential methods of resolving the dispute. The court analyzed the four factors under CR 23.02(c) in reaching this conclusion. First, it found that few individuals possess a rational interest in prosecuting their claims in separate actions due to the significant cost of pursuing wage claim actions compared to the amount of any individual's lost wages. Second, the circuit court found there was no other pending litigation which had commenced concerning the controversy at hand. Third, the court found it was the appropriate forum as Sullivan is a Kentucky corporation with its primary place of business and corporate decision-maker located in Louisville. Additionally, many class members who work or worked at the

Kentucky campuses are likely located in Kentucky. Finally, the circuit court considered the difficulties likely to be encountered in managing the class action and determined the class action was manageable. The court opined that although individual damages must be calculated, individualized damages were required in *Hensley* and were calculated in the related federal case. The circuit court concluded that if Sullivan cooperated with discovery, then the case should be as manageable as the federal case. As such, the circuit court did not abuse its discretion in finding that the class satisfied CR 23.02(c).

Finally, we address Sullivan's arguments that the putative class is overly broad. Sullivan cites no case law supporting this argument. "It is not our function as an appellate court to research and construct a party's legal arguments, and we decline to do so here." *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005) (citation omitted); *Bailey v. Bailey*, 399 S.W.3d 797, 801 (Ky. App. 2013). As such, we deem Sullivan's argument waived and decline to address it further. *Id.*

In sum, Sullivan asks us to reverse the circuit court's order certifying the class of admissions officers, arguing several members of the class will not be entitled to damages. Ruling in Sullivan's favor would require us to make a merits determination, which is inappropriate at the class certification stage. Therefore, we hold the circuit court did not abuse its discretion in certifying the class.

For the foregoing reasons, we affirm the Jefferson Circuit Court's order certifying the class.

ALL CONCUR.


BRIEF FOR APPELLANT:

Grover C. Potts, Jr.
Michelle D. Wyrick
Louisville, Kentucky

BRIEF FOR APPELLEE:

Garry R. Adams, Jr.
Theodore W. Walton
Abigail V. Lewis
Louisville, Kentucky